UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CATHLEEN BLEVINS, | ) |
| Plaintiff, | ) |
| vs. | ) Case No.   2:05-cv-2490-TMP |
| WALGREEN CO., INC., | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This cause is before the court on the motion for summary judgment filed January 19, 2007, by the defendant, Walgreen Co., Inc. ("Walgreen"). Defendant seeks dismissal of all of plaintiff's claims arising from alleged discriminatory treatment that she received while she was pregnant. This matter has been fully briefed, and the court has considered the evidence and arguments set forth by both parties. The parties have consented to the exercise of jurisdiction by the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

**I.  SUMMARY JUDGMENT STANDARD**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment

"always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  Celotex, 477 U.S. at 322-23.  There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

    Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)).  The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings.  Celotex, 477 U.S. at 324.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

    After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The substantive law will identify

which facts are material and which are irrelevant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id. at 248.  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  His guide is the same standard necessary to direct a verdict:  "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52; see also Bill Johnson's Restaurants, Inc. v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983).  However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989).  Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff.  Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988).  Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor.  Anderson, 477 U.S. at 255.  The non-movant need not be given the benefit of every inference but only of every reasonable inference.  Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II.  FACTS FOR SUMMARY JUDGMENT

Applying the above standards to the evidence before the court, the following facts appear to be undisputed or, if disputed, are taken in a light most favorable to the non-moving plaintiff.

Plaintiff Cathleen Blevins was hired by Walgreen in October 2001 to work as a cashier in a Fraser, Michigan, store.  On her first day of employment, she watched a stack of videotapes provided by Walgreen to train her for the job.  In April 2002, Blevins was transferred to a Walgreen store in Dayton, Ohio, where she was promoted to the positions of SIMS[1] coordinator in May 2002.  In this position she was given authority over reviewing store inventory.  As part of the promotion, she was trained to handle "1506 claims," a process by which Walgreen stores dispose of damaged, expired, recalled, or returned products that cannot be sold.  Only management employees are authorized to process the 1506 claims.  Any store employee may place items into the store's 1506 bins, but only managers are permitted to compile and submit the 1506 claim form, by which Walgreen is reimbursed for the unsaleable items by the respective wholesalers and suppliers.

While working at the Dayton store, Blevins became pregnant.  She discussed with her manager reducing her work hours from 40 to 30 per week because of problems she was having with the pregnancy.  Although the manager was resistant to the idea at first, once her doctor told her that she should be "at home with her feet up," her request for a modified schedule was accommodated.[2]

---

[1]  SIMS is an acronym for Strategic Inventory Management Systems Coordinator.

[2]  Blevins does not assert that she was in any way discriminated against during her first pregnancy.  She concedes that when she brought in a doctor's note, her request for fewer hours was granted.

Walgreen promoted Blevins to a management trainee/assistant manager position ("MGT") in September 2003. She was transferred to the Kettering, Ohio, store and worked as an MGT there. In October 2003, she was transferred to the Pelham, Alabama, store, where she continued to work as an MGT when her family moved to Alabama. She was transferred to a Hoover location in July 2004, and then to a Birmingham store on Greensprings Highway in August 2004, where she continued to work as an MGT until her employment was terminated.

The Greensprings store was open 24 hours a day. Jennifer Murkerson was Blevins' manager at the store, and David Sheppard was Walgreen's district manager for the stores in northern Alabama, including the Greensprings location. Blevins worked the overnight shift at the Greensprings store, usually working from about 10 p.m. until about 9 a.m. She usually worked eight nights in a row, followed by six days off.

She never received any verbal or written reprimands during her tenure at Walgreen, until the incident that led to this lawsuit. While working at the Greensprings store, Blevins discovered in September 2004 that she was pregnant with her second child. In late October 2004, Blevins left work early to see a doctor after experiencing sharp pains. She explained to the executive assistant manager ("EXA"), Derwin Jackson, that she was pregnant, but she asked him not to mention her condition until she could tell Ms. Murkerson personally.

Upon her return to work, Blevins told Murkerson that she was pregnant, and asked what documentation she needed from her doctor in order to limit her work duties so that she would not be required to do heavy lifting. Murkerson said a note from the doctor would be sufficient. Blevins brought in a doctor's note, which stated that Blevins could not lift more than 20 pounds repetitively.

5

Murkerson responded that Blevins was not required to lift 20 pounds often, although Blevins told her that her stockroom duties did involve a lot of heavy lifting. Murkerson asked whether Blevins would continue to work the night shift, and Blevins said she did not see that as a problem, but that she would have to see. Even after the discussion with Murkerson about lifting, Blevins continued to be asked to perform duties that including lifting more than 20 pounds. She would leave the assignments that included lifting unfinished at the end of her shift. Although Jackson once told her that the assignments should have been completed,[3] she was never disciplined for any failure to complete her duties.

One of her duties as the night-shift manager at the Greensprings store was the filing of the 1506 claims. The process involved reviewing merchandise items placed in the "1506 area" by store employees to determine whether and why they were considered "unsaleable." Blevins would then scan the merchandise items' barcodes with an electronic scanner, entering a code that designated the reason the item was being removed from the shelves, entering the quantity of each item, and then posting the claim. The "reason" codes were: "A" for authorized return; "R" for customer return; "F" for defective; "E" for expired, and "H" for shelf damage. The 1506 claims were ultimately used by Walgreen to receive reimbursement from the vendors or manufacturers for items that were unsaleable.

Items routinely were left in a part of the Walgreen storeroom that had been designated as the "1506 area." In the Greensprings store, the 1506 area was under a table, the top of which was used

---

[3] Although Blevins complains about Jackson's statement that the duties should have been completed, Jackson did not say that Blevins should have done the heavy lifting involved. She concedes that one of the cashiers was supposed to help her take boxes off the shelves.

mostly for receiving merchandise. Under the table, three bins were used to collect items for the 1506 claims. Any Walgreen employee could place items into the bins, but only managers could actually file the claims. The items were placed in the bins, but were not usually labeled with the reason they were removed from the shelves. Customers' returns were placed there with the receipt and bag, but items removed for other reasons did not usually contain any information. Accordingly, the manager who posted the 1506 claim had to determine the reason code based on an assessment of the item. If an expiration date had passed, the manager would note that as the reason; if the item appeared damaged or defective, that reason code would be indicated. Once the claim was processed, the items were disposed of in a trash compactor.

Other Walgreen managers testified that items sometimes were placed in the 1506 area by mistake or because a cashier may not have wanted to take the time to re-shelve the item. They testified that, for that reason, another duty involved in the 1506 process was to decide whether all the items in the 1506 area should be included on the report, or whether some items were saleable and should be re-shelved. Blevins has testified, however, that she did not know that items sometimes were placed in the 1506 area by mistake, and that she believed that any item in the area should be processed on the claim form. The filing of the claim required judgment on the part of the manager. Blevins has conceded that, if an item with an expiration date was not expired, it should be re-shelved, should not be placed on the 1506 claim, and that she should check the expiration dates of items she put on the 1506 claim as expired.

On November 16, 2004, Blevins worked the night shift and filed a 1506 claim. The trash compactor had been broken, so Blevins left the items from the 1506 claim in a bag next to the trash

compactor. When her shift ended on the morning of November 17, 2004, another MGT, John Burrows, came to work at the store. He found items in the trash that did not appear damaged or expired, including some hair spray and cologne. Burrows asked Blevins about the merchandise found in the trash. She told him, "Well, it was back in the bins. Have a nice morning." He showed some of the items to Murkerson, and Murkerson told Burrows to look in the trash for other saleable items. She also told Burrows to look up Blevins' previous 1506 claims. When he did, he saw that Blevins had filed a 1506 claim for some Barbie dolls that he remembered leaving on the receiving table for repackaging. He said they should not have been put on the 1506 claim or thrown away because they could have been repackaged and sold. Burrows also showed the merchandise to Jackson, who testified that he saw "totes" of merchandise in the garbage that had never been opened. Jackson said he saw items in the trash that morning that had been left in the stockroom the day before, 10 to 15 feet away from the 1506 area.

On November 18, 2004, Murkerson contacted a Walgreen loss prevention supervisor, Brent McCulloch, who came to the store. Murkerson asked Blevins to meet with McCulloch. Jackson said that when Murkerson paged Blevins over the intercom to have her come to discuss the merchandise, Blevins said "oh, crap," and had tears in her eyes. She told Jackson she was sorry, and that she would pay for it. McCulloch questioned Blevins about the 1506 claim. Blevins testified that McCulloch asked if she knew she had committed a felony, and was intimidating to her. She agreed to reimburse Walgreen for the amount of the undamaged merchandise, and she signed a statement which stated, in part:

> Loss prevention came in to let me know that some of the items I have 1506'd and thrown away were a mistake, and I realize I should have used better judgment before throwing them away. I am willing to reimburse Walgreens for items that could have been sold. The dollar figure I agree to pay back is $350.12.

(Ex. 13 to Blevins Depo.) When asked about the written statement, Blevins stated that she was "very intimidat[ed]," and "would have probably signed just about anything to make it stop."

After the meeting with McCulloch,[4] Murkerson contacted Sheppard, the district manager. Murkerson decided, with Sheppard's approval, to fire Blevins. Blevins was told that she was being fired for gross negligence. Under Walgreen's discipline policy, gross misconduct or negligence is grounds for immediate dismissal. The policy does not define gross misconduct or negligence.

Plaintiff has offered evidence that only one other Walgreen employee has been accused of improperly filing a 1506 claim. That employee was Shahn Michiels, a male store manager in Montgomery, Alabama, who was accused of disposing of merchandise on a 1506 claim form as a way to reduce store inventory. Michiels's supervisor was David Sheppard. Walgreen officials determined that Michiels "was to be terminated for violation of company policy." Michiels was given the opportunity to resign, and did so the next day. He was not asked to pay restitution. There is no evidence that any other employee has ever been accused of mishandling any 1506 claims.

---

[4] It is not clear whether Blevins met with McCulloch on November 18 or 19. The statement she signed was dated the 19th, although McCulloch testified that he came to the store on the 18th. The dispute over the date is not relevant to any dispositive issue, however, and it is clear that the investigation, meeting, and termination all occurred within a couple of days of the night shift that began November 16 and ended November 17.

### III.  DISCUSSION

Plaintiff bases her complaint on Title VII, which prohibits discrimination in the workplace on the basis of race, sex, or national origin.  In 1978, Congress passed the Pregnancy Discrimination Act ("PDA"), amending Title VII and providing that discrimination "because of sex" or "on the basis of sex" includes discrimination on the basis of pregnancy, childbirth, or related medical conditions. 42 U.S.C. § 2000e(k).  Since the passage of the PDA, it has been established that pregnancy discrimination claims are analyzed using the same framework as other Title VII sex discrimination claims.  See Armstrong v. Flowers Hospital, Inc., 33 F.3d 1308, 1312-13 (11th Cir. 1994).  In the instant case, plaintiff asserts that she was fired because she was pregnant.  The defendant asserts that plaintiff has not produced substantial evidence to support her claim of discrimination, and that gross negligence in the disposal of store merchandise is the reason the plaintiff was fired.

Under Title VII, a plaintiff asserting a disparate treatment claim must prove that the defendant had discriminatory intent either through direct or circumstantial evidence.  Denny v. City of Albany, 247 F.3d 1172, 1182 (11th Cir. 2001).  Direct evidence establishes that intent without the need for any inference or presumption.  Id. (quoting Standard v. A.B.E.L. Servs. Inc., 161 F.3d 1318, 1330 (11th Cir. 1998)).  Where there is no direct evidence, the plaintiff must prove intent in accordance with the "burden-shifting" method first set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and further refined in Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).

Blevins has provided no direct evidence of discrimination and, therefore, must rely on the McDonnell Douglas/Burdine three-step, burden-shifting framework.  Under this framework, Blevins carries the initial burden of establishing a *prima facie* case of discrimination.  McDonnell Douglas,

411 U.S. at 802. If a *prima facie* case is shown, Walgreen as the defendant employer must "articulate some legitimate, nondiscriminatory reason" for Blevins' termination. Id. If this is done, Blevins may attempt to show that the proferred reason was merely a pretext for discrimination, and that Walgreen's intent actually was discriminatory. See Burdine, 450 U.S. at 253; Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997), cert. denied, 118 S. Ct. 685, 139 L. Ed. 2d 632 (1998).

In using this framework, it is the court's task to determine whether there is substantial evidence from which a reasonable jury could find purposeful discrimination. It is not the duty of the court to evaluate whether the decision to terminate plaintiff's employment was fair or wise; employers are free to make unfair or unwise employment decisions so long as they do not violate anti-discrimination statutes. See Elrod v. Sears, Roebuck and Co., 939 F.2d 1466, 1470 (11th Cir. 1991).

### A. *Prima facie* Case

To establish a *prima facie* case in accordance with the McDonnell-Douglas framework, Blevins must show that (1) she is a member of a protected class, (2) she is qualified for her position, (3) she suffered an adverse effect on her employment, and (4) she suffered from "differential application of work or disciplinary rules." Armstrong v. Flowers Hospital, Inc., 33 F.3d 1308, 1314 (11th Cir. 1994); McDonnell Douglas, 411 U.S. at 802. The first three prongs of the *prima facie* case are not in dispute. At the time of her termination, plaintiff was pregnant. She was qualified for the position, having been promoted to it and having received on-the-job training. Clearly, plaintiff's dismissal was an adverse employment action by Walgreen. The only issue is whether Blevins has

shown that she suffered from discipline that was harsher than other similarly situated, non-protected employees.

Walgreen claims that Blevins has failed to show the fourth element of her *prima facie* case: that a similarly situated employee was treated differently. For her comparator, Blevins points to Shahn Michiels, a manager at a Walgreen store in Montgomery, Alabama, as a similarly situated employee who was treated differently. Similarly situated employees are used as comparators by the court to determine whether the disciplinary treatment received by the plaintiff raises an inference of discrimination. See Burke-Fowler v. Orange County, Fla., 447 F.3d 1319 (11th Cir. 2006). In order for an employee to be used as a comparator, however, three elements must be met: first, the employee must be outside the plaintiff's protected class; second, the misconduct of the plaintiff and the employee must be "nearly identical"; and third, there must be a meaningful difference between the discipline, or lack thereof, resulting from the misconduct of the two comparators. Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dep't of Educ., 342 F.3d 1281, 1289 (11th Cir. 2003); Nix v.WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1185 (11th Cir. 1984). The "nearly identical" standard applies to both the "quantity and quality of the comparator's misconduct," and is used to "prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." Burke-Fowler, 447 F.3d at 1323.

Michiels, the male employee presented by Blevins as a comparator, meets the first element in that, as a male, he is outside the plaintiff's protected class. Further, viewing the facts in the light most favorable to Blevins, the non-moving party, Michiels' conduct could be viewed as nearly

identical to that of Blevins. Both employees discarded saleable items and falsified a 1506 claim.[5] The question presented is whether Michiels received more favorable treatment, or was disciplined less harshly.

Blevins points out that Michiels was given the opportunity to resign in lieu of termination, while she was not. The difference between Blevins' termination and Michiels' resignation must be material in nature. Cf. Maynard, 342 F.3d at 1289 (plaintiff and comparator failed to meet the similarly situated employee standard because of material differences between the two); Nix, 738 F.2d at 1186-87 (plaintiff and comparator were not similarly situated because of material differences between their circumstances). Both of these disciplinary measures resulted in the involuntary termination of employment. There is no dispute that Walgreen would have fired Michiels if he had not resigned. There is no material difference between Blevins' termination and Michiels' termination;

---

[5] Plaintiff contends that she disposed of the saleable merchandise through mistake, while Michiels did so purposefully to reduce his store's inventory. Nevertheless, from the description of her meeting with McCulloch, it is clear that at least McCulloch was suspicious of intentional conduct by plaintiff, as evidenced by his question whether she knew that what she had done was a felony. In any event, if Michiels is not an appropriate comparator because his conduct was intentional and plaintiff's was not, then plaintiff is left with *no* comparator, and she cannot meet her *prima facie* showing. Although the existence of a comparator is not itself an element of the Title VII claim, see Collado v. United Parcel Service, Co., 419 F.3d 1143, 1154 (11th Cir. 2005), plaintiff cannot meet her required *prima facie* showing without one in this case, because without the comparator, no inference or presumption of discrimination is created by the remaining three elements of the "burden-shifting" framework. Although plaintiff argues that no other Walgreen employee was ever disciplined for a mistaken 1506 claim, this alone cannot establish an inference or presumption that Walgreen acted with a discriminatory purpose in her case. In the absence of a "nearly identical" comparator who was treated more favorably than the plaintiff, it cannot be said that the adverse employment decision made with respect to the plaintiff was anything more than a legitimate, non-discriminatory decision.

both employees lost their jobs. Accordingly, Blevins has failed to meet her burden of showing differential application of discipline in this regard.

Blevins also asserts that Walgreen sought restitution from her, but not from Michiels. Blevins has failed to demonstrate, however, that the restitution was a form of discipline exacted by the employer. To the contrary, the evidence here is that Walgreen suggested to Blevins that her conduct had been criminal, and Blevins sought to avoid the consequences by settling the dispute through restitution. Payment of restitution under these circumstances was a voluntary attempt to resolve a dispute outside of the employment context. Blevins agreed to pay the restitution in an effort to appease her accusers, and apparently because she feared criminal liability. There is no evidence that the $350 was withheld by the employer as a form of discipline for the conduct, or that Walgreen's disciplinary policy provides for any form of monetary discipline. All of the evidence indicates that Blevins agreed to pay the restitution, and that such payments were voluntary.[6] This allegation, therefore, does not support a claim that she was subjected to a different discipline than Michiels.

In addition, Blevins relies on evidence indicating that no other Walgreen employee, besides Blevins and Michiels, has been fired for improper use of the 1506 procedure in order to meet the fourth prong of the *prima facie* case. This is unpersuasive. Unknown comparators, committing unknown misconduct, will not allow the court to determine whether the quantity and quality of the comparator's misconduct is nearly identical. See Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999). Apples should be compared to apples, not to unknowns. See id. at 1368-69. Blevins must

---

[6] Although it is clear that Blevins agreed to pay restitution, it is not clear that she actually made any payments or that money was withheld from pay that was due her. There simply is no evidence on that point.

provide a comparator in order to show Walgreen management knew similar misconduct occurred and chose to act in a manner different from Blevins' case.  Jones v. Gerwens, 874 F.2d 1534, 1542 (11th Cir. 1989).  Blevins does not argue that she knows of any other employee who engaged in similar misconduct and was not fired, nor does she allege that Walgreen had a policy or practice of ignoring 1506 improprieties.  Blevins' argument simply suggests that it is unlikely that all other Walgreen managers have been mistake-free in the 1506 procedure.  Even if Walgreen has been less than diligent in policing the 1506 procedure, an employer's lackadaisical method of enforcing its policies does not provide evidence of intentional discrimination.  Accordingly, Blevins does not satisfy the fourth prong of the *prima facie* case.[7]  Because Blevins has failed to establish the fourth and final prong of the McDonnell-Douglas *prima facie* case, the defendant's motion for summary judgment is due to be granted.

### B.  Walgreen's Non-Discriminatory Reason

Even if Blevins had established a *prima facie* case under the McDonnell Douglas /Burdine framework, the motion for summary judgment still would be due to be granted.  In accordance with McDonnell Douglas, once the *prima facie* showing is made, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment action.  McDonnell Douglas Corp., 411 U.S. at 802.  Walgreen asserts that it fired Blevins for gross negligence in the improper

---

[7] The court recognizes that it is possible, albeit difficult, to prove a circumstantial case of discrimination without reference to a comparator, but this case is not it.  Plaintiff admits that she made a mistake on the 1506 claim, and in light of this there is no reason to presume or infer discrimination on the employer's part, unless there is evidence of more favorable treatment to someone similarly situated to plaintiff.

use of 1506 procedures. Blevins does not argue that she failed to properly follow those 1506 procedures; she simply argues that she misunderstood the rules, and that she could have been retrained or disciplined less severely. Walgreen's employment policy provides for termination in the case of gross negligence by an employee, and Blevins does not dispute the existence of the policy. Accordingly, Walgreen has met its burden of articulating a non-discriminatory reason for terminating Blevins.

Walgreen's articulation of a legitimate, non-discriminatory reason for Blevins' termination shifts the burden to Blevins to show that the reason either is not worthy of belief or that, in the light of all the evidence, a discriminatory reason more likely motivated the decision than the proffered reason. Standard v. A.B.E.L. Servs. Inc., 161 F.3d 1318, 1331-33 (11th Cir. 1998). It is not enough for Blevins to show the articulated reason is false; Blevins must further show that the true reason for her termination was discriminatory. See Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1228 (11th Cir. 1993). Further, it is not the duty of this court to evaluate whether the decision to discipline Blevins was fair or wise; employers are free to make unfair or unwise employment decisions so long as they do not violate anti-discrimination statutes. See Elrod v. Sears, Roebuck and Co., 939 F.2d 1466, 1470 (11th Cir. 1991).

Blevins has offered six reasons why Walgreen's articulated reason should be considered unworthy of belief or why Walgreen was more likely motivated by a discriminatory reason. These six reasons are the lack of objective criteria for determining whether an item is unsaleable, the lack of prior disciplinary problems on Blevins' record, Walgreen's failure to follow its own disciplinary policies, the timing of Blevins' termination, the emergence of problems with the store manager,

16

Murkerson, and assistant manager, Jackson, after they learned of Blevins' pregnancy, and the lack of evidence that other employees have been disciplined for 1506 violations. Each of these reasons will be examined in turn.

First, three of the reasons may be discarded immediately, because it is not the duty of this court to determine whether Walgreen's employment decisions are wise or unwise, fair or unfair. See Elrod v. Sears, Roebuck and Co., 939 F.2d 1466, 1470 (11th Cir. 1991). This court may question only whether the decisions violated anti-discrimination statutes. The plaintiff makes much of the fact that it may be possible for one manager to code an item as "expired," while another manager could code the same item as "shelf damage." She argues that this lack of objective criteria in the realm of assessing merchandise is evidence of discrimination. This argument miscontrues precedent regarding the need for objective criteria in the realm of evaluating an employee. In that context, courts have noted that employers should not be allowed to hide discriminatory motives behind purely subjective assessments of employee qualifications. There is no evidence that Walgreen imposed a different standard upon Blevins or punished her for conduct that was tolerated from other employees. Although the actual method for evaluating merchandise seems, at best, imprecise, there is no indication here that Walgreen's amorphous standards for evaluating merchandise are used to mask discrimination. The conduct Blevins engaged in was not a simple mistake in deciding the reason to include items on the 1506 claim. Blevins admitted that she did not evaluate the items at all to determine whether they were saleable; she simply assumed that the items were unsaleable, and chose

a code that could apply.[8]  While an absence of objective criteria may be critical in assessing an employer's true motive in, for example, evaluating an employee's qualifications, the lack of objective criteria in assessing the quality of merchandise does not provide the same basis for inference.

In addition, terminating Blevins after one transgression of Walgreen's policies may be an unwise business decision, but Walgreen's disciplinary policies clearly allow for the possibility of termination for a single instance of gross negligence.  The relevant question is whether Murkerson and Sheppard, the two supervisors who acted in terminating Blevins, honestly believed Blevins was guilty of an act of gross negligence, and whether their beliefs were the reasons behind the termination.  Blevins offers no evidence that contradicts the testimony of both Murkerson and Sheppard, who were presented with facts that painted a picture of Blevins as an employee who cavalierly disposed of saleable merchandise, and then dishonestly represented to vendors that the merchandise was defective or unsaleable.  Blevins' assertion that she should have been retrained, rather than terminated, asks this court to deem Walgreen's business decision unwise and unfair.  It is not this court's duty to make such a determination.  Furthermore, as Walgreen's disciplinary policy clearly allows for immediate termination in situations of gross negligence, there is no evidence Walgreen failed to follow its own disciplinary procedures.

Next, Blevins points to the timing of her termination, which came about a month after Murkerson became aware of Blevins' pregnancy.  Timing alone, however, is insufficient to meet the

---

[8] For example, the plaintiff admits that she knew she should check the expiration date on a bottle of vitamins that was among the discarded items, but that she had not done so.  The question of whether an expiration date has passed does not require any subjective judgment; it is merely an objective determination based upon an easily ascertainable fact.

pretext burden. Close temporal proximity, alone, does not show that Walgreen's reasons for termination were pretextual. See Wascura v. City of South Miami, 257 F.3d 1238, 1244-45 (11th Cir. 2001). Close temporal proximity may be a factor, but it is not dispositive in and of itself. See id. To find otherwise would give all employees who become part of a protected class while employed a "free period" in which they could engage in misconduct without fear that any adverse action could be taken against them.

Further, the evidence of problems with Murkerson and Jackson, the store manager and EXA respectively, are not sufficient to allow a reasonable juror to find that Walgreen's reason is not worthy of belief. Because Jackson was not a decision-maker, only the actions of Murkerson, the supervisor who chose to terminate Blevins' employment, and Sheppard, who approved Murkerson's decision, are relevant. See Elrod, 939 F.2d at 1470. Blevins admits that she failed to properly perform her 1506 duties. Murkerson never said or did anything that would indicate she had any bias against pregnant women.[9] Plaintiff does not even allege that Sheppard had any discriminatory intent in approving her discharge. In short, there is no evidence sufficient to allow a reasonable juror to find that any decision-maker at Walgreen had any discriminatory intent.

Finally, Blevins rehashes her reliance on the absence of other Walgreen employees, besides Michiels, who were disciplined for failure to properly follow 1506 procedures. As in her *prima facie* case, unknown employees, committing unknown misconduct, are not relevant to this inquiry. Cf. Maniccia, 171 F.3d at 1368-69; Jones, 874 F.2d at 1542. Even if it is true that no other Walgreen

---

[9] It is interesting to note that Murkerson also worked at Walgreen during her pregnancy.

manager was ever disciplined for a 1506 violation (and Michiels proves this is not true), this does not mean that Walgreen's decision to enforce the rule against plaintiff was the product of discrimination. It may have been the product of a determination that Walgreen had to get more strict with its inventory. The point is that merely saying that no other Walgreen employee was so disciplined proves nothing about purposeful discrimination.

Even in light of all of the above evidence, there is not sufficient evidence to allow a reasonable juror to determine a discriminatory reason more likely motivated the decision to terminate Blevins than the reason provided by Walgreen. Questions of business wisdom may exist, as well as questions of fairness, but questions of discrimination are not sufficiently supported. The evidence does not demonstrate that Walgreen's reason for Blevins' termination is pretextual; accordingly, the motion for summary judgment is due to be granted.

### IV.  CONCLUSION

Accordingly, consistent with the foregoing discussion of the evidence presented and the law governing this action, this court determines that Walgreen's motion for summary judgment (court document #13) against Blevins is due to be GRANTED, and Blevins' sole claim of discrimination on the basis of pregnancy is due to be DISMISSED WITH PREJUDICE.

A separate order will be entered in accordance with the findings set forth herein.

DATED this 28th day of August, 2007.

　　　　　　　　　　　　　　　　　　／s／ T. Michael Putnam
　　　　　　　　　　　　　　　　　　T. MICHAEL PUTNAM
　　　　　　　　　　　　　　　　　　U.S. MAGISTRATE JUDGE